IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARRETT WILLIAMS, | : | CIVIL ACTION NO. **1:CV-09-1587** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFREY A. BEARD, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On August 17, 2009, Plaintiff Garrett Williams, while an inmate at the State Correctional Institution at Mercer (SCI-Mercer"), and in the custody of the Pennsylvania Department of Corrections ("DOC"), filed, through counsel, this civil rights action, pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). Plaintiff paid the filing fee. Named as Defendants are Jeffrey A. Beard, Secretary of the DOC, and Catherine McVey, Chairwoman of the Pennsylvania Board of Probation and Parole ("PBPP"). (Doc. 1, pp. 2-3). Plaintiff sues both Defendants only in their official capacities. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343.

On September 8, 2009, Defendants jointly filed an Answer to Plaintiff's Complaint with Affirmative Defenses. (Doc. 5). Also, on September 8, 2009, Defendants jointly filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). **(Doc. 6).** On October 13, 2009, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). **(Doc. 10).**

---

[1]The record reveals that on December 6, 2009, Plaintiff was paroled by the PBPP and was living in an apartment in Philadelphia, Pennsylvania, pursuant to his home plan. (Doc. 20).

Both motions have been briefed, with attachments, and are ripe for disposition. (Docs. 7, 11, 15, 17, 19, 20, & 22).[2]

## II. Admitted Allegations of Complaint.

Based on Plaintiff's Complaint (Doc. 1) and Defendants' Answer (Doc. 5) to it, the following pertinent allegations are admitted:

2.      The plaintiff, Garrett Williams, is a Pennsylvania resident incarcerated in the State Regional Correctional Facility at Mercer. As described below, he [Plaintiff] has been granted parole by the Pennsylvania Board of Probation and Parole on the condition that he secures a placement/bed in a community residential center prior to his release from prison.

5.      The Pennsylvania Board of Probation and Parole has the power under Pennsylvania law to enter into contracts to purchase community services to assist state parolees, including contracts to lease residential facilities in communities within which to house inmates who are being conditionally paroled.

6.      Over the course of many years, the Parole Board has relied on community correction residences or group home residences (often referred to as community correction centers or CCR's) either operated or supervised by the Department of Corrections when conditioning the release of certain offenders granted parole. Under such conditional circumstances, paroled offenders may be released on parole only if they obtain occupancy in a CCR.

7.      CCR's are principally operated by private contractors who respond to requests for proposals from the Department of Corrections. They are geographically distributed throughout Pennsylvania.

8.      The Department of Corrections, through its Bureau of Community Corrections [BCC], also directly operates CCR's with BCC staff in certain locations.

9.      It is admitted that sex offenders are not housed in privately owned CCCs under contract with the Department of Corrections.

---

[2]On June 21, 2010, the Court issued an Order and referred the Motions for Judgment on the Pleadings to the undersigned. (Doc. 23).

15.     When CCR's are willing to accept sex offenders, they have limited the number of placements or beds assigned to sex offenders.

16.     CCR's have not so restricted any other category of paroled offender.

17.     Opposition by the community, including restrictions placed on sex offender occupancy, is a factor in the limited number of CCC beds available to sex offenders.

18.     The BCC is administered regionally  - - Region I covering the immediate Philadelphia area, Region II covering the rest of eastern and all of central Pennsylvania, and Region III covering western Pennsylvania.

19.     Typically sex offenders approved for parole are only considered for CCR placement in the region they lived in prior to incarceration.

22.     It is admitted that Plaintiff was arrested in late 1999 and convicted in early 2000 for raping his eleven year old daughter.  It is further admitted that he has undergone sex offender treatment and is obligated to continue treatment on parole.

23.     On May 15, 2008, the PBPP determined that there is no reasonable indication that Williams poses a risk to public safety and that the interests of the Commonwealth will not be injured by the grant of parole to him. Accordingly, parole was granted Plaintiff Williams on that date conditioned on initial CCR residency and participation in outpatient treatment.

25.     In June of 2008, Williams rented an apartment in Philadelphia.  This apartment was investigated by Parole Board personnel the following month.

28.     Non sex offenders who have been granted parole conditioned on initial CCR residency are routinely released within a matter of weeks.

29.     [I]t is admitted that some sex offenders reach their maximum sentence because of an unavailability of bed space at a CCC, it is denied that this is "common."

30.     [Plaintiff] Williams has now been awaiting release for fourteen months. His maximum sentence will not be reached until July 2015.  Release at that time will additionally be without the benefit, afforded non sex offenders, of community reintegration.

In his Complaint, Plaintiff raises an equal protection claim under the Fourteenth Amendment, a due process claim under the Fourteenth Amendment, and a claim under the Federal Fair Housing Act ("FHA"). (Doc. 1, pp. 8-9). As his equal protection claim, Plaintiff avers that Defendants have treated "[him] and other sex offenders who have been granted parole in a substantially more adverse manner than non sex offenders who have been granted parole." Plaintiff also avers that Defendants have administered the distribution of Community Correction Centers or Residences ("CCR") placements in a manner that is arbitrary and capricious in violation of his due process rights. Further, Plaintiff avers that, based on his unspecified "mental impairment, as well as societal stereotypes of sex offenders as mentally impaired individuals ...," "[he] is a disabled person within the meaning of the [FHA] and, thus protected by the [FHA]'s prohibitions against discriminating against disabled persons with respect to housing opportunities." (*Id.*, p. 9).

As relief, Plaintiff requests, in part, as follows:

enter a judgment declaring that the actions of the defendants have violated his rights under the Equal Protection and Due Process Clauses of the U.S. Constitution and the Fair Housing Act;

enjoin the defendants from continuing to violate his rights;

award him the costs, expenses and attorneys fees associated with the prosecution of this case;

(*Id.*).

## III. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

4

by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[3]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status,

---

[3]Plaintiff indicates in his pleading that the two individual Defendants are state actors. (Doc. 1, pp. 2-3).  Defendants admit this.  (Doc. 5, pp. 1-2).

without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.[4]

## IV. Motion for Judgment on the Pleadings Standard.

In *Faylor v. Szupper*, 2009 WL 2982646, *4 (W.D. Pa.), the Court stated:

> A motion for judgment on the pleadings is subject to the same standard
> as a Rule 12(b)(6) motion to dismiss. *Mele, supra,* 359 F.3d at 253. Thus, we
> will view all facts presented in the pleadings in a light most favorable to
> the non-movant.  *Id.*  A motion for judgment on the pleadings will not be
> granted "unless the moving party has established that there is no material issue
> of fact to resolve, and that [they are] entitled to judgment as a matter of law."
> *Id.*

The Court in *Costenbader v. Classic Design Homes, Inc.*, 2010 WL 597456, *3 (M.D. Pa.),

stated the Rule 12(b)(6) standard.  The Court stated:

> The issue is whether the facts alleged in the complaint, if true, support a
> claim upon which relief can be granted. In deciding a 12(b)(6) motion, the
> court must accept as true all factual allegations in the complaint and give the
> pleader the benefit of all reasonable inferences that can fairly be drawn
> therefrom, and view them in the light most favorable to the plaintiff. *Morse
> v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). However, "we
> are not bound to accept as true a legal conclusion couched as a factual
> allegation." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949-50, 173
> L.Ed.2d 868 (2009) (internal quotations omitted).

> To decide a motion to dismiss, a court generally should consider only the
> allegations in the complaint, exhibits attached to the complaint, matters
> of public record, and documents that form the basis of a claim. *See Burlington
> Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Pension
> Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196
> (3d Cir.1993).

---

[4]As stated above, it is well settled that personal liability under §1983 cannot be imposed
upon a state official based on a theory of *respondeat superior.   See Ascenzi v. Diaz,* 2007 WL
1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the § 1983 violations of their
subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

## IV. Discussion.

Initially, we agree with Defendants (Doc. 15, pp. 2-4) that the exhibits Plaintiff attached to his Doc. 11 brief should not be considered at this stage of the case based on the above stated standard for a Rule 12(c) motion.  Plaintiff's exhibits were not attached to his Complaint and they are not directly referenced in it.  Plaintiff's exhibits would be appropriate at the summary judgment stage after complete discovery.  We also decline Plaintiff's suggestion that if the Court does not consider his exhibits extraneous to the pleadings, then his Doc. 10 motion be converted into a summary judgment motion.  (Doc. 17, p. 8).  It does not appear from the docket that any discovery has occurred in this case, and proper notice was not given to Defendants regarding a conversion of Plaintiff's motion to one under Rule 56 with a reasonable opportunity to submit their own exhibits.  *See Renchenski v. Williams*, C.A. No. 07-3530 (3d Cir. Oct. 4, 2010).  Further, as discussed below, we find that Plaintiff's claims fail as a matter of law.  Thus, we shall not consider Plaintiff's exhibits with respect to the present motions.

### A.  Request for Injunctive Relief

As mentioned, part of the relief which Plaintiff seeks in this case is an injunction essentially requiring Defendants to treat him like a non-sex offender for purposes of inmates who have been conditionally paroled by the PBPP and are waiting for bed space at an appropriate CCR.  (Doc. 1, p. 9).  After the briefing of the two pending motions, counsel for Defendants submitted a letter to the Court dated April 21, 2010, stating as follows:

> In July of 2009, Plaintiff submitted a written request to the Parole Supervisor at SCI-Mercer asking to have his Board Action modified to allow him to be paroled to his approved home plan instead of a CCC.  On July 27, 2009, this request was forwarded to the Board of Probation and Parole.

> Pursuant to this request and after review of his case, on October 27, 2009, the Board of Probation and Parole modified their parole decision to allow Plaintiff to be paroled "upon completion fo sex offender program to an approved plan upon condition that there are no misconducts." (See the Oct. 27, 2009 Board Decision attached hereto.) Accordingly, on December 6, 2009, Plaintiff was paroled and is currently living in an apartment in Philadelphia pursuant to his home plan.

(Doc. 20).[5]

Counsel for Defendants concludes that since Plaintiff was paroled to his home plan, his request for injunctive relief is now moot.

Counsel for Plaintiff responded to Defendants' counsel's letter in an April 22, 2010 letter and clarifies that Defendants are only contending that Plaintiff's request for injunctive relief is moot, and not Plaintiff's request for declaratory relief. (Doc. 22). Further, Plaintiff's counsel does not dispute that Plaintiff was paroled on his home plan on December 6, 2009. However, Counsel for Plaintiff argues that Plaintiff's request for injunctive relief is not moot since Plaintiff is basically challenging the Commonwealth's policy of treating sex offenders differently than other paroled offenders "due to community opposition impacts numerous paroled offenders." Counsel for Plaintiff states that Plaintiff is represented in this case by the Community Justice Project ("CJP") and that the CJP receives many requests from inmates to represent them regarding the present issue, and that these other paroled but not released inmates are waiting for this Court to rule on the issue. Counsel for Plaintiff concludes that, based on the representational relationship and the Supreme Court's determination that "the release on conditional parole does not moot a challenge to a parole

---

[5]As of the date of this R&R, neither counsel has informed the Court of any change in Plaintiff's place of residence.

release policy," the Court should not dismiss Plaintiff's request for injunctive relief as moot.

We agree with Defendants and find that, since Plaintiff has now been released on parole and resides in a Philadelphia apartment pursuant to his home plan, his request for injunctive relief challenging the parole release policy, which he claims treated him differently than non-sex offenders with respect to being placed in a CCR, is moot. Plaintiff did not file his case as a class action, and he did not seek class certification. Simply because Plaintiff's counsel states that CJP receives requests for representation from other inmates with respect to Plaintiff's claims does not render our Plaintiff's request for injunctive relief as still presenting an actual case or controversy in our case based on Plaintiff's release on parole over ten (10) months ago. There is no claim that these other inmates were not provided representation so that they could file their own actions in court. There is no claim that these other inmates could not file *pro se* their own cases. Also, Plaintiff does not make any showing of collateral consequences of the alleged failure to implement a parole release policy which treated him the same as non-sex offenders with respect to being placed in a CCR.

While Plaintiff's counsel cites to *U.S. Parole Com. v. Geraghty,* 445 U.S. 388 (1980), for support in his April 22, 2010 letter (Doc. 22), we find this case inapposite since our case, as stated, is not a class action and Plaintiff did not move to certify his case as a class action. In *Williams v. City of Phila.,* 2010 WL 3986104, *12-*13, (E.D. Pa.), the Court stated:

> the Supreme Court's decision in *Geraghty,* as interpreted by the Third
> Circuit in *Wilkerson v. Bowen,* 828 F.2d 117 (3d Cir.1987), controls. In
> *Geraghty,* the named plaintiff, John Geraghty, a prisoner in federal custody
> who had been denied parole, brought a putative class action challenging the
> United States Parole Commission's parole release guidelines. The district court
> denied Geraghty's motion for class certification, and Geraghty was released

from prison while the appeal was pending. The Parole Commission moved to dismiss the appeal as moot. The Third Circuit held that the action was not moot, and the Supreme Court granted certiorari. Noting "the flexible character of the Art. III mootness doctrine," 445 U.S. at 400, the Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." *Id.* at 404. In reaching this conclusion, the Court reasoned that "[a] plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." *Id.* at 402. Thus, even after a proposed class representative's claim on the merits is resolved, he retains a right to have a class certified that is "more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement." *Id.* at 403. Thus, "[t]he proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined." *Id.* at 404.

In *Wilkerson,* the Third Circuit held that the Supreme Court's reasoning in *Geraghty* applied with equal force to proposed class representatives whose personal claims were mooted after they filed their class certification motion, but before the district court decided the motion. *See Wilkerson,* 828 F.2d at 121 ("It would seem to us that the principle espoused in *Geraghty* is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in *Geraghty* )."). Since *Wilkerson* was decided, the Third Circuit has consistently held that a putative class representative whose claim was mooted after the class certification motion was filed but before the motion was decided is not automatically disqualified from representing a class. *See Rosetti v. Shalala,* 12 F.3d 1216, 1227-28 (3d Cir.1993) (holding that under *Wilkerson,* it was error for district court to deny class action certification motion of named plaintiffs whose claims were resolved after filing motion for class certification but before district court decided motion); *Lusardi v. Xerox Corp.,* 975 F.2d 964, 982 (3d Cir.1992) ("Just as appellate review may relate back to an adverse class certification decision made when plaintiffs had a live claim, so district court review of a pending certification motion relates back to its filing, if plaintiff had a live claim at that time."); *see also id.* at 982 n. 32 ("[A]llowing a district court to decide a pending class certification motion-filed when the named plaintiff had a live claim-after the named plaintiff's individual claims have been resolved is consistent with the Supreme

Court's holding in *Geraghty.*" ). Although other circuits have disagreed with *Wilkerson*'s reading of *Geraghty,* it remains good law in this circuit and is therefore binding on us. *See Rosetti,* 828 F.3d at 1228 n. 25 (noting other circuits' disagreement with *Wilkerson* and stating that "we remain willing, not to mention bound, to stand by our past decisions, even the lonely ones with which other courts have disagreed"). **We therefore find that the named plaintiffs' release from the PPS after the class certification motion was filed does not moot the claims of the class** or render the named plaintiffs atypical or inadequate to represent the class. FN4

> FN4. The cases Defendants cite are inapposite. For example, Defendants cite *Cobb v. Yost,* 342 F. App'x 858 (3d Cir.2009) (non-precedential), for the proposition that a prison inmate's claims for injunctive relief against the prison are mooted by his release from prison. (Dist. Atty.'s 2d Supp. Resp. 4.) ***Cobb* was not a class action, however, and it has no application here.** *See Rosetti,* 12 F.3d at 1227 ("Only the unique nature of a class action, and the named plaintiff's unique interest in pursuing his procedural claim to represent a class, provide the requisite personal stake in the certification issue that preserves a federal court's jurisdiction over that question.").

(Emphasis added).

Even if the Court did agree with Plaintiff with respect to his request for injunctive relief, it could no longer "enjoin Defendants from continuing to violate his rights" since he has been paroled now for almost eleven (11) months. Plaintiff's release on parole in December 2009 has foreclosed the Court's ability to issue any meaningful injunctive relief to Plaintiff. *See Martin v. PA DOC*, 2009 WL 983006 (W.D. Pa.). Plaintiff's request for injunctive relief can no longer be redressed by a favorable decision by this Court. *See Sash v. Hogsten*, 2008 WL 618945 (M.D. Pa.); *Hinton v. Miner*, 138 Fed. Appx. 484 (3d Cir. 2005)(Per Curiam). In *Hinton,* the Court stated:

> An Article III "case or controversy" must be present at all stages of the litigation for a federal court to exercise judicial power. *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477-78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). To maintain this appeal, Hinton must show some "collateral consequence" of

the alleged failure to properly calculate his custodial term, and that his injury remains "likely to be redressed by a favorable judicial decision." *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

*See also Cobb v. Yost*, 342 F. Appx. 858 (3d Cir. 2009).

Plaintiff does not contend that the "capable of repetition, yet evading review" exception to the mootness doctrine applies in his case, and he does not contend that he "may be subjected again at some point in the future to the conduct that forms the basis of his compliant." *Williams v. City of Phila.*, 2010 WL 3986104, *11 (E.D. Pa.). As the *Williams* Court stated, the exception "applies only in exceptional situations, and generally only where the named Plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." Id.(citations omitted). In fact, Plaintiff has now been on parole on his home plan for almost eleven (11) months. Additionally, Plaintiff does not explain how he still has a personal stake in his case regarding his injunction request. Thus, we will recommend that Plaintiff's request for injunctive relief be dismissed as moot.

B. *Equal Protection Claim*

We concur with Defendants that Plaintiff's equal protection claim under Fourteenth Amendment fails as a matter of law.[6] Defendants state that "sex offenders are not 'in all relevant respects' like other inmates awaiting CCC placement. Placement of sex offenders poses unique penological and logistical challenges for the [DOC]. Because sex offenders are different than other types of criminals, it is rational for the [DOC] to treat them differently when determining

---

[6]As stated above, since we find that Plaintiff's claims fail as a matter of law, we did not consider Plaintiff's exhibits attached to his Doc. 11 brief.

appropriate CC[R] placement." (Doc. 15, pp. 4-5). As Defendants point out, Plaintiff admits in his brief that "pursuant to Supreme Court and Third Circuit decisional law his equal protection claim does not call for heightened scrutiny." (Doc. 11, p. 6).

In *Dantzler v. Tennis*, 2008 WL 4274486, *2 (E.D. Pa.), the Court stated:

> The Equal Protection Clause, to the extent it serves as Dantzler's basis for relief, affords no heightened scrutiny of a state's treatment of sex offenders. *See, Cutshall v. Sundquist,* 193 F.3d 466, 482 (6th Cir.1999). The Supreme Court has named the personal characteristics receiving heightened equal protection scrutiny: race, alienage and national origin, gender and status as a non-marital child. *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439-40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Different punishments or parole schemes based only on the nature of a crime do not fall within the classifications listed in *Cleburne*. Another decision of the Supreme Court specifically refused to apply heightened scrutiny to a classification based on the nature of the petitioner's crime. *Chapman v. United States,* 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Citing *Cleburne* and *Chapman,* the Third Circuit has refused to find that a distinction drawn between "compulsive and repetitive" sex offenders and other sex offenders receives heightened scrutiny. *Artway v. Attorney General of New Jersey,* 81 F.3d 1235, 1267 (3d Cir.1996).
>
> The Equal Protection Clause requires only that the state provide some plausible reason-a "rational basis"-for treating convicted sex offenders differently from other prisoners or parolees. Pennsylvania's interests in providing communities notice about the release of convicted sex offenders and in providing paroled sex offenders with post-incarceration treatment meet the rational basis standard of review.
>
> Dantzler may not use § 1983 as a vehicle for his claims relating to his release on parole. To the extent Dantzler's claims relate to institutional reforms beyond his personal release, they rely on the Equal Protection Clause as a basis for relief. Because Pennsylvania's treatment of sex offenders satisfies the Equal Protection Clause's "rational basis" test, Dantzler's claims must be dismissed.

In *Williams v. PA Board of Probation and Parole*, 2008 WL 5120773 (E.D. Pa.), the Plaintiff inmate, who was convicted of burglary ant attempted rape, filed a §2254 habeas petition claiming,

in part, that his equal protection rights were violated since he was not treated the same by the PBPP as other offenders when he was placed on a waiting list for placement in a CCR that met the conditions of his parole. The *Williams* Court stated:

> To the extent that the present petition may be construed as alleging that the Board's most recent parole decision violated Williams' Fourteenth Amendment right to equal protection, such a claim is without merit. A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.3d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *see Harper*, 2007 WL 2713246, at * 3. The Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Partway v. Atty' Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Williams has not provided circumstances indicating that he was treated differently than others similarly situated. *See Kumar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated."); *Harper*, 2007 WL 2713246, at *4 (citing *Kumar*); *Rivera v. Gillis*, 2006 WL 208803, at * 4 (M.D. Pa. Jan. 25, 2006) (quoting *Kumar*).

2008 WL 5120773, *3. *See also Harper v. Thomas*, 2007 WL 2713246 (E. D. Pa.).[7]

We agree with *Dantzler, Harper and Williams,* as well as our Defendants, and find that Plaintiff, as a convicted sex offender, is not similarly situated with other inmates who are awaiting placement into a CCR. (Doc. 15, p. 14). Further, Plaintiff has not shown that he was treated differently than other similarly situated inmates, *i.e.* other convicted sex offender inmates whose

---

[7]Defendants rely upon *Dantzler, Harper and Williams* cases, which we find persuasive and with which we agree, and Defendants attach these cases to their reply brief. (Doc. 15, p. 5 and Doc. 15-2).

parole was conditioned upon placement into a CCR with a sex offender treatment. In fact, the *Dantzler*, *Harper* and *Williams* cases show that our Plaintiff was treated the same as other similarly situated inmates.

As Defendants state:

> Unlike inmates convicted of non-sexual crimes, sex offenders require sex offender treatment while at the CCC. Contrary to Plaintiff's assertion, not all CCCs provide sex offender treatment. *Compare* Compl. at § 32 *with* Ans. at § 32 (denying this allegation). Because sex offender treatment serves the penological interest of rehabilitation, it is rational (and prudent) for the Department not to place a sex offender like [Plaintiff] Williams into a CCC not capable of treating his unique needs. This reason alone meets the rational basis standard of review. *Dantzler*, 2008 WL 4274486 at * 2.

(Doc. 15, p. 6).

Defendants also point to the implications of Pennsylvania's Megan Law on inmates, such as our Plaintiff, who have been convicted of certain sex offenses. 42 Pa. C.S.A. §9791, *et seq.* As the *Harper* Court noted:

> Because [Plaintiff Harper's] his convictions include certain sex offenses under the Pennsylvania Crimes Code (rape, 18 Pa. C.S. § 3121; and involuntary deviate sexual intercourse, 18 Pa. C.S. § 3121) Harper is required to register under Pennsylvania's Megan's Law, 42 Pa. C.S. § 9791, *et seq.* Convicted sex offenders are particularly difficult to place because of the need for community acceptance and because of the community notice requirements. Many CCC's will not accept Megan's Law registrants, such as Harper, because of these statutory mandates.

2007 WL 2713246, *3, n. 4.

Thus, we agree with Defendants who state:

> Further, certain privately run CCCs do not accept Megan's Law registrants because of the statutory mandates (*Harper*, 2007 WL 2713246 at * 3), insurance reasons, local ordinances, and/or community concerns. Refusing to contract with those CCCs that refuse to accept Megan's Law

registrants would reduce the total number of centers available for other inmates awaiting space and injuring the community corrections program at large. Plaintiff's disagreement with this decision is again of no moment. *See Romero,* 517 U.S. at 632. This basis for limiting the number of sex offenders at any one CCC is rationally related to a legitimate state interest and, by itself, defeats Plaintiff's Equal Protection claim.

(Doc. 15, p. 13).

Therefore, we will recommend that Defendants' Motion for Judgment on the Pleadings be granted with respect to Plaintiff's Fourteenth Amendment equal protection claim since we find that it fails as a matter of law, and we will recommend that Plaintiff's Motion be denied regarding this claim.

### C. Due Process Claim

Defendants argue that Plaintiff's due process claim fails since he did not have a protected liberty interest in parole and his placement on a waiting list before he could be housed in a suitable CCR did not shock the conscience. As discussed below, we concur with Defendants.

In *White v. Grace*, 2005 WL 1653436, *2 (M.D. Pa.), the inmate Petitioner, convicted, in part, of a sex offense, filed a §2254 habeas petition challenging the PBPP's grant of parole which was, in part, conditioned upon him having an approved home plan before he was released to a CCC.[8]

---

[8]In *White*, the Court noted as follows:

Community Corrections Centers are operated by the Department of Corrections and provide a controlled community-based setting outside the prison to continue an inmates programming while providing a transitional reintegration period. (Doc. No. 11, Ex. A). The Department of Corrections divides the State into three regions: Region I which includes the greater Philadelphia area and vicinity; Region II which includes areas from Allentown north to the New

The Court in *White* found that its Petitioner failed to state a substantive due process claim.

The Court reasoned as follows:

> It is axiomatic that "there is no constitutional or inherent right of a convicted
> person to be conditionally released before the expiration of a valid
> sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,*
> 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Moreover, it is well-settled

---

> York Border and west through the Harrisburg are and beyond; and Region III
> which is the far Western portion of the State including Pittsburgh and Erie. When
> an inmate is released to a CCC, he is to be assigned to a CCC in the Region in
> which he was convicted. *Id.* White's Philadelphia County conviction will require
> him to be released to a CCC in Region I. However, because of the high number
> of inmates paroled and limited bed space in the CCC's, there often is a waiting
> period for an inmate actually to move into a CCC once granted parole. *Id.* After
> an inmate is paroled to a CCC, an application must be forwarded to the
> appropriate Region to find a spot for that inmate in a CCC which has space and
> programming consistent with the inmate's needs and the parole plan. *Id.*

2005 WL 1653436, *1, n. 1.

The *White* Court also noted as follows:

> A home plan is a plan submitted by an inmate which indicates where they
> are going to reside once they are released into society and where they will
> be employed. (Doc. 11, Ex. A). Once an inmate submits a home plan for
> consideration, an investigation is conducted to ensure that the information is
> correct and that is does not violate any possible parole restrictions (e.g., some sex
> offenders may not be allowed to reside or work near schools or playgrounds). *Id.*
> By requiring an inmate to have an approved plan prior to the release to a CCC,
> the inmate must demonstrate that he is ready to progress through the CCC
> program and have an acceptable plan already in place. *Id.* It also ensures that the
> inmate will not spend an extended period of time in the CCC waiting to develop
> an approved plan, as inmates are not released from a CCC without an approved
> home plan in place. This helps to expedite the inmate through the CCC program
> and also allows more efficient turnaround time for bed space in the CCC. *Id.*

2005 WL 1653436, *1, n. 2.

that parole is not a protected liberty interest in Pennsylvania. "[I]n Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his or her maximum term [of imprisonment]." *Weaver v. Pennsylvania Board of Probation and Parole,* 688 A.2d 766, 770 (Pa.Commw.Ct.1997). *See also Burkett v. Love,* 89 F.3d 135, 139 (3d Cir.1996); *Tubbs v. Pennsylvania Board of Probation and Parole,* 152 Pa.Cmwlth. 627, 620 A.2d 584, 586 (Pa.Commw.Ct.1993); *Reider v. Pennsylvania Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967, 971 (Pa .Commw.Ct.1986). "Under Pennsylvania law, the sentence imposed for a criminal offense is the maximum term; the minimum term merely sets the date prior to which a prisoner may not be paroled." *Brown v. Pennsylvania Board of Probation and Parole,* 668 A.2d 218, 220 (Pa.Commw.Ct.1995) (citation omitted). "Prisoners have no absolute right to parole, but rather only the right to petition for parole upon the expiration of the minimum term." *Id.* Thus, the Petitioner's claim that he has yet to be paroled to a CCC cannot constitute a procedural due process violation, since he did not have a protected liberty interest in parole. *See supra; Greenholtz,* 442 U.S. at 7-10. Moreover, the Petitioner has not alleged any type of action by the Pennsylvania Board of Probation and Parole which might give rise to a substantive due process violation, such as a denial of his parole to a CCC on the basis of race, political belief, religion or other impermissible criteria. *See Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Burkett,* 89 F.3d at 139-40 (citing *Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980)). White simply cannot be placed in a CCC because, at present, he has not submitted an acceptable home plan. Once an acceptable home plan is approved, and provided space is available in an appropriate CCC, White will qualify for transfer to that location to continue to serve his sentence until successful completion of the program. The petition for writ of habeas corpus will be denied.

2005 WL 1653436, *2.[9]

In *Maher v. Lawler*, 2010 WL 2542228 (M.D. Pa.), the Petitioner inmate claimed in his §2254 habeas petition that he was improperly denied parole since he did not successfully complete

---

[9]Defendants attached a copy of the *White* case to their reply brief, Doc. 15-2. We find *White* persuasive, and we agree with *White*.

a sex offender treatment program.  The *Maher* Court stated:

> It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Likewise, the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. *Thorpe v. Grillo,* 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir.2003) (because there is no constitutional right to parole, any substantive due process claim is foreclosed); *Rodgers v. Parole Agent SCI-Frackville, Wech,* 916 F.Supp. 474, 476-77 (E.D.Pa.1996); *McCrery v. Mark,* 823 F.Supp. 288, 294 (E.D.Pa.1993).

> However, the United States Court of Appeals for the Third Circuit has also held that:

> [E]ven if a state statute does not give rise to a liberty interest in parole release under *Greenholtz,* once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.

> *Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980). Accordingly, even where a state statute grants discretion to the state parole board to condition or completely deny parole, it may not permit "totally arbitrary parole decisions founded on impermissible criteria." *Id.* Consequently, a federal court may review a decision by a state parole board for an abuse of discretion. *Id.* Upon such review, relief will only be available if an applicant can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the parole board made its determination based on "frivolous criteria with no rational relationship to the purpose of parole...." *Id.* at 236 n. 2.

2010 WL 2542228, *2.

Based on the pleadings in this case, detailed above, and based on *White and Maher*, we find that by the PBPP's decision requiring Plaintiff to wait for bed space to become available at an appropriate CCR as a condition of parole was not based on "frivolous criteria with no rational relationship to the purpose of parole." *Id*. (citation omitted).  As the *Maher* Court stated, "denial

of parole for failure to complete a sex offender treatment program was well within the Parole Board's considerable discretion." *Id.*, *3.

Thus, as in *Maher*, we find that the parole decision in our case "was not premised upon the type of frivolous criteria which would warrant relief under *Block*." *Id*. Therefore, we will recommend that Defendants' Motion for Judgment on the Pleadings be granted with respect to Plaintiff's Fourteenth Amendment due process claim, since we find that it fails as a matter of law, and we will recommend that Plaintiff's Motion be denied regarding this claim.

D. FHA Claim

In *Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp.*, 455 F. 3d 154, 156 (3d Cir. 2006), the Court stated:

> The Fair Housing Act proscribes discrimination in the sale of a dwelling due to a handicap of those who are to reside in the dwelling after the sale. 42 U.S.C. § 3604(f)(1). [FN6] A dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." *Id.* § 3602(b).
>
>> FN6. This provision makes it unlawful [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of --
>>
>>> (A) that buyer or renter;
>>> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>>> (C) any person associated with that buyer or renter.
>
> 42 U.S.C. § 3604(f)(1).

(Footnote 5 omitted).

In his reply brief, "Plaintiff contends that Defendants' polices have had a disparate impact on him and other paroled sex offenders who meet the definition of handicap under [the FHA]. [Plaintiff] is not asserting intentional discrimination based on handicap."  (Doc. 17, p. 11).

Plaintiff raises a claim that his rights under the Fair Housing Act ("FHA"), as amended, 42 U.S.C. § 3601, *et seq.,* were violated due to discrimination based on his unspecified mental disability, "as well as societal stereotypes of sex offenders as mentally impaired individuals who cannot control unlawful sexual acts even with treatment/counseling ... ."[10] (Doc. 1, p. 9).  Plaintiff avers that he was protected by the FHA's prohibitions against discriminating against disabled persons with respect to his CCR placement.  Defendants state that according to the Complaint, "Plaintiff 's placement on the sex offenders waiting list is because he is classified as a sex offender." (Doc. 15, p. 18).  In his Complaint, Plaintiff averred that DOC officials advised him that there was a waiting list for sex offenders' placement, and he averred that  this waiting list was not applicable to non-sex offenders who were granted parole.  (Doc. 1, p. 6).  Plaintiff also averred that DOC officials advised him that the waiting list for sex offenders was extensive and that such offenders must wait a very long time for placement in a CCR.  (*Id*.).  Further, Plaintiff averred that non-sex offenders who were granted parole conditioned on initial CCR residency were routinely released within a matter of weeks.  (*Id*.).  In his brief, Plaintiff states that after he was conditionally granted parole upon placement into an appropriate CCR, he asked why he was being treated differently than all other paroled offenders who were required to be placed into a CCR after prison.  Plaintiff

---

[10]We note that the parties do not address if a CCC or a CCR constitutes a dwelling for purposes of the FHA, 42 U.S.C. §3602(b).

states that "he was informed that this is due to the 'extremely limited' number of beds made available to sex offenders and that this is the result of local residency restrictions prohibiting sex offender residency." (Doc. 11, p. 3).

In their reply brief, Defendants responded to Plaintiff's contentions as follows:

> Plaintiff's classification as a sex offender for purposes of Megan's Law and for purposes of CCC placement is not based on a mental or physical disability but rather arises entirely from the fact that he is guilty of committing sexual crimes. Because there are no allegations that the Department treats non-disabled sex offenders better than disabled sex offenders, Plaintiff's mental or physical handicap (whatever that may be) is completely irrelevant to his CCC placement. Plaintiff's status is due to his acts, not his alleged handicap.

(Doc. 15, p. 18).

A disability discrimination claim under the FHA requires more than Plaintiff's instant allegations, including a showing that a discriminatory purpose was a motivating factor behind the challenged action, *i.e.* making Plaintiff wait for a bed in an appropriate CCR. Also, a failure to accommodate claim under the FHA requires Plaintiff to show that the accommodations requested were necessary to give him an equal opportunity to use and enjoy his dwelling, and to show a connection between the accommodation he requested and its necessity for affording him an equal opportunity to use and enjoy his dwelling. *See Spieth v. Bucks County Housing Auth.*, 2009 WL 197559 (E. D. Pa.). Additionally, conclusory allegations of discrimination are not sufficient to put Defendants on notice of the claims against them. *See Hidalgo v. Pa. Dept. of Public Welfare*, Civil No. 08-1847, M.D. Pa. (10-8-08 Order).

Specifically, the *Spieth* Court stated:

> The Fair Housing Amendments Act ("FHAA") bars discrimination against disabled people in the sale or rental of housing and requires reasonable accommodations in "rules, policies, practices, or services" as necessary to allow a handicapped person to use and enjoy a dwelling. 42 U.S.C.A. § 3604(f). There are three types of claims that a plaintiff with a disability may bring under the FHAA: 1) intentional discrimination, or disparate treatment, claims; 2) disparate impact claims; and 3) claims that a defendant refused to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (citing 42 U.S.C. § 3604(f)(3)(B)).
>
> The text of the FHAA precludes discrimination in the sale or rental of a dwelling or in providing services or facilities in connection with that dwelling. 42 U.S.C.A. § 3604. Typically, this act is used to bring suits against landlords, but courts have also held that this act applies to suits against municipalities and land use authorities. *Wind Gap*, 421 F.3d at 176.

2009 WL 197559 , *6; *Comm. Services, Inc. v. Heidelberg Tp.*, 439 F. Supp. 2d 380 (M.D. Pa. 2006); *Brillhart v. Sharp*, 2008 WL 2857713 (M.D. Pa.).

Further, "[i]n order to state a claim for disparate treatment under the [FHA], a Plaintiff must demonstrate that a 'discriminatory purpose was a motivating factor behind the challenged action.'" *Id.*, *7 (citation omitted). "In order to state a claim for failure to make a reasonable accommodation, a Plaintiff must show that 'the accommodations that it requested are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling.'" *Id.* (citation omitted). Plaintiff Williams does not allege that any accommodation was necessary, based on his disability, for him to use and enjoy his dwelling. Nor does Plaintiff state that a discriminatory purpose was the motivating factor behind the decision of the PBPP to make his parole conditioned

23

upon finding a suitable CCR in which to place him due to his conviction for a sex offense.  In fact, as stated, Plaintiff admits that he was informed that there were extremely limited number of beds available to sex offenders was for CCR placement and that this was due to local residency restrictions which precluded sex offender residency.  Also, as stated, this limitation was due to Megan's Law concerns.

The *Spieth* Court also stated:

> "[T]he plaintiff in an FHAA reasonable accommodations case must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an "equal opportunity" to use and enjoy housing."  *Lapid-Laurel*, 284 F.3d at 459; *see also Smith & Lee Assoc., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) (holding that plaintiffs need to s how that "but-for" the reasonable accommodation, they will likely be denied an equal opportunity to enjoy a particular dwelling); *Bronk v. Ineichen*, 54 F.3d 425, 429 (7t Cir. 1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."); *U.S. v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) ("[without a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of the defendants to make a reasonable accommodation.").

2009 WL 197559 , *7.

Stated simply, Plaintiff Williams has not stated a disparate treatment claim under the FHA since he has not sufficiently alleged any discrimination based on a recognized handicap or disability.  Rather, he states that he was made to wait longer than non-sex offenders for placement into a CCC.  Plaintiff does not properly allege that he was denied CCR placement due to any recognized disability, and he does not properly allege that Defendants had a discriminatory intent with respect to their conduct.  Further, Plaintiff does not sufficiently connect any disability as the cause of any

alleged discriminatory conduct by Defendants. Rather, as Plaintiff acknowledges, he was advised that the delay in placing him in a CCR was due to local residency restrictions prohibiting sex offender residency. Thus, Plaintiff has not met his burden of stating a *prima facie* case of purposeful discrimination against Defendants. *See Poindexter v. Allegheny Co. Housing Auth.*, 2007 WL 3120289, * 13 (W.D. Pa.). We disagree with Plaintiff that he has shown a disparate impact and that the burden now shifts to Defendants to show that they had a legitimate non-discriminatory reason for their conduct. (Doc. 17, p. 11).

Therefore, we will recommend that Defendants' Motion for Judgment on the Pleadings be granted with respect to Plaintiff's FHA claim since we find that it fails as a matter of law, and we will recommend that Plaintiff's Motion be denied regarding this claim.

Defendants also argue that, since Plaintiff seeks relief in the nature of directing the DOC to treat him as a non-sex offender for purposes of placing him in a CCR which would result in his speedier release from prison, his claims essentially attack the fact or duration of his confinement and are cognizable in a habeas petition and not a §1983 action.[11]

---

[11]The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973); *Queen v. Miner*, C.A. No. 08-1049 (3d Cir. 2-29-08), slip op. p. 3, n. 3 (Per Curiam) ("challenge that affects fact or duration of confinement must be brought in habeas petition")(citing *Preiser, supra*.).

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002), stated:

> whenever the challenge ultimately attacks the 'core of habeas' -- the
> validity of the continued conviction or the fact or length of the
> sentence -- a challenge, however denominated and <u>regardless
> of the relief sought,</u> must be brought by way of a habeas corpus

Plaintiff contended in his brief that if he served his maximum sentence before a bed in a CCR became available, then he would not have been released more quickly from prison. Plaintiff states that if he is successful in this action, he "will have improved his prospects for an earlier release by a successful challenge to the Defendants' procedures, but release earlier than his maximum term will not necessarily follow." (Doc. 17, pp. 12-13).

As discussed, Plaintiff was released from prison on parole on December 6, 2009, and he currently resides in his apartment in Philadelphia under his home plan. Even though Plaintiff is no longer in custody in prison, his parole status may still constitute the "in custody" requirement of a §2254 habeas petition. *See Aszenzi v. Erickson*, 2007 WL 712129, * 2 (M.D. Pa.). Regardless, since we have found that Defendants' Motion for Judgment on the Pleadings should be granted with respect to all of Plaintiff's claims, and since we find that Plaintiff's claims fail as a matter of law, and we do not address the issue of whether Plaintiff's action was properly brought as a §1983 civil rights action.

Moreover, since we will recommend that Defendants' Motion for Judgment on the Pleadings be granted with respect to all of Plaintiff's claims, we do not address Defendants' contention that Plaintiff has failed to state the personal involvement of Defendant McVey with respect to his claims

---

petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate. (Emphasis added).

Thus, insofar as Plaintiff Williams was challenging the legality and duration of his previous continued confinement at SCI-Mercer, his case may have been a habeas corpus petition.

based on Pennsylvania law, 61 Pa.C.S.A. §4103, which provides that a CCC or CCR is supervised and operated by the DOC and not by the PBPP.  (Doc. 15, p. 21).  In any event, since the filing of the parties' briefs, Plaintiff is no longer confined in prison and he is not in a CCC or CCR.  Rather, he is now on parole living in his own apartment under his home plan and seemingly under the supervision of the PBPP, and not the DOC.

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Judgment on the Pleadings **(Doc. 6)** be granted with respect to all of Plaintiff's claims, and that Plaintiff's Motion for Judgment on the Pleadings **(Doc. 10)** be denied with respect to all of his claims.  It is further recommended that this case be closed.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 1, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARRETT WILLIAMS, | : | CIVIL ACTION NO. **1:CV-09-1587** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JEFFREY A. BEARD, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 1, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen (14)
days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                 **s/ Thomas M. Blewitt**

_____    **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**


**Dated: November 1, 2010**